## The State v. Swanagan, *Appellant.*

### DIVISION TWO.

**Murder in Second Degree;** EVIDENCE TO SUPPORT CONVICTION. The evidence in this case examined and *held* to support a conviction of murder in the second degree.

*Appeal from Camden Circuit Court.*—HON. W. I. WALLACE, Judge.

AFFIRMED.

*John A. Blevins* for appellant.

*John M. Wood,* Attorney General, for the State.

THOMAS, J.—This is an appeal from the sentence by the circuit court of Camden county, in February, 1891, of the defendant to imprisonment in the penitentiary for a term of ten years, for murder of the second degree.

The testimony shows that the defendant, his brother Robert and Mark Shaw had been living in the neighborhood where the deceased lived for only a short while prior to the difficulty. Their principal business whilst there seems to have been trapping. A few days prior to the homicide the defendant accused Everett Hurst, a boy eighteen years of age, and a son of the deceased, Edward C. Hurst, of stealing some of his traps. The boy denied the charge. On Sunday morning between nine and ten o'clock, Everett Hurst was on his father's place at an old house about a quarter of a mile from his father's residence, feeding some cattle, when the defendant, his brother Robert and Mark Shaw

came up to where he was and engaged in a conversation with him. During the course of the conversation Everett asked defendant if he still accused him of stealing his traps, to which defendant replied that he did, Everett in turn telling him that he was a "damned liar." Robert Swanagan then said to Everett that he could not call him a liar, and at the same time assaulted him, striking him three or four blows. Everett did not strike back. From there Everett returned home and told his mother about the difficulty he had had with the Swanagans, who thereupon informed the boy's father.

Deceased then said he would go and see what they had against Everett, and putting on his hat went out to the barn where Everett and Wheeler Green (a neighbor who happened to be visiting there at the time) were, caught his horse, and the three started out, riding horseback, to see the Swanagans. After they crossed the creek, which was about a quarter from the house, they heard some of the Swanagan party hallooing; they hallooed back, and John and Robert Swanagan commenced making a noise like the crowing of a rooster. About this time deceased and his party saw the Swanagan party upon the hillside, and deceased hallooed to them to come down where they were, that he wanted to see them. They kept going on, and deceased and his party went partly around the hill on the top of it until they met the Swanagan party. It seems that Green and Everett met defendant a minute or so before deceased came up. Green said to defendant, "We will settle it right here," and got off of his horse and hitched it, and pulled off his coat. Deceased came up just at this time and likewise dismounted, and threw the bridle rein over his horse's head, and was standing, holding it, when defendant, who was about twenty-five or thirty steps from him, and armed with a double-barrel shotgun, presented it and fired at deceased, and, without taking

the gun from his shoulder, turned about half way around and shot Green, who was at the time ten or fifteen steps from deceased. Deceased Hurst and Green both fell within a few feet of their horses. Green died instantly and Hurst died that evening about ten o'clock.

The only excuse offered by defendant for the shooting was that both Green and Hurst were advancing on him, and he feared bodily injury to himself, and shot to avert it. The testimony showed, conclusively, that neither the deceased, his son nor Green had any weapons, and that none of defendant's party were in any immediate danger. The boy ran and jumped down a cliff when one of the party called attention to his escaping, and said, "Shoot him, too."

The defendant and his brother fled immediately after the killing. Some time afterward they were captured in Kentucky, and brought back to answer the indictment in this case.

The court, by its instructions, authorized the jury to convict defendant of murder of the second degree or acquit him on the ground of self-defense. This was certainly as favorable to defendant as he had a right to expect. It seems to us the evidence in the case shows a heart regardless of social duty and fatally bent on mischief. The court extended the right of self-defense to its utmost tension. The defendant was clearly guilty of as high a grade of homicide as murder of the second degree of which he was convicted and for which he was sentenced. The judgment will, therefore be affirmed. All concur.